Opinion filed May 21, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed May 21, 2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                  ___________

 

                                                          No. 11-07-00128-CR 

               __________

                                                              

                                BRIAN
KIETH HENRICKS, Appellant

 

                                                             V.

                                            
STATE OF TEXAS, Appellee

 



 

                                           On
Appeal from the 9th District Court 

 

                                                    Montgomery
County, Texas

 

                                          Trial
Court Cause No. 06-02-01200-CR

 



 

                                                                   O
P I N I O N

Brian
Kieth Henricks[1] appeals from
a guilty verdict for murder.  We affirm.  

                                                    
                                               Background Facts 








Henricks
lived with his mother Diane Marie MacBird and her husband Robert MacBird.  They
got into an altercation on the night of December 4, 2005.  Henricks shot Robert
four times, killing him.  Robert also suffered from blunt force trauma to his
head.  Henricks and Diane took Robert=s
body and dumped it in the national forest area, off Calvary Road in Montgomery
County.  The next day, Diane and Henricks met with attorney Jerald Crow, who
arranged a meeting with the police at his office.  The police arrived at Crow=s office and interviewed
Diane.  Henricks then took the officers to where they had dumped the body and
showed the police where he had put the gun that he used to shoot Robert.

Henricks
was charged with Robert=s
murder.  Henricks pleaded not guilty and proceeded to a jury trial.  The jury
found Henricks guilty and sentenced him to fifty years confinement in the Texas
Department of Criminal Justice, Institutional Division.

Issues
on Appeal 

Henricks
raises seven issues on appeal.  First, Henricks argues that the trial court
erred in allowing testimony regarding Henricks=s
exercise of his right to retain counsel, testimony regarding  his exercise of
his right to remain silent, and testimony regarding plea negotiations. 
Henricks next argues that the trial court erred in admitting character evidence
relating to Henricks when his character was never placed in issue.  In three
issues, Henricks argues that he did not receive a fair trial because the State
failed to provide discovery regarding its blood spatter expert.  Henricks also
argues that the trial court erred in allowing the State to present an in-court
demonstration of how the victim was killed.  Finally, Henricks argues that the
trial court erred in sua sponte adding a deadly weapon finding to the judgment.


Detective
Rogers=s
Testimony 

             Detective
Marvin Rogers testified that he received an instruction from his lieutenant to
go to Crow=s office. 
Detective Rogers testified that Diane and Henricks were present when he
arrived.  In response to questions regarding what occurred at Crow=s office, Detective Rogers
testified as follows:

Q.
Were you ever shown or did you ever observe a male?  

 

A.        Yes. 


 

Q.        Outside
of Jerald Crow?  

 

A.        Yes. 


 

Q.        Were
you given that individual=s
name?  

 








A.        Yes.  

 

Q.        Was that Brian [Kieth] Henricks?  

 

            A.       
Yes.  

 

[DEFENSE
COUNSEL]:  Excuse me, I=m
going to object, Your  Honor, to anything related to this officer by Mr. Crow. 
It would fall under attorney‑client privilege and my client=s never waived that
privilege.  

 

THE COURT: 
Overruled.  

 

            Q. [PROSECUTOR] Now,
at this point, you know it=s
a murder investigation, correct?  

 

A.        Correct.  

 

Q.        Okay.  Were these two people identified to you as suspects?  

 

A.        At the time, Mr. Henricks was.  

 

Q.        Okay. 
And did you at any time ask to speak to these two individuals, Diane Marie
MacBird and Brian [Kieth] Henricks?  

 

A.        Yes, I did.  

 

Q.        And were you given permission to speak with either one of
them?  

 

A.        I was given permission to speak with Diane MacBird.  

 

. .
. .

 

Q.        Okay. 
When you asked to speak with Brian [Kieth] Henricks, what were you told?

 

A.         His
attorney wanted to speak to him at this time.  He wanted to work with him
further for possibly further cooperation down the road.  

 

[DEFENSE COUNSEL]: 
Objection.  Same objection, Your Honor, attorney‑client privilege.

 

THE COURT: 
Overruled. 

 








Q. [PROSECUTOR] 
This whole encounter at Jerald Crow=s
office, did Mr. Crow ever indicate to you how these people got to his
office?  

 

            [DEFENSE
COUNSEL]:  Objection, again, Your Honor.  

 

[PROSECUTOR]:
That=s a yes or no. 
We=re not asking for ‑‑


 

THE COURT: 
Overruled.  

 

[DEFENSE
COUNSEL]:  Attorney‑client privilege.  

 

Q. [PROSECUTOR] 
Did he indicate how he got there?  

 

A.        Yes.  

 

Q.        And did he indicate they would cooperate with you fully?  

 

A.        Eventually, yes.  

 

Q.        And did you ever get any further cooperation?  

 

[DEFENSE
COUNSEL]:  Objection, Your Honor.  Same objection, attorney‑client
privilege.     

 

            THE
COURT:  Overruled.  

 

THE WITNESS:  No.  

 

Q.        
[PROSECUTOR] Throughout your investigation, back from that date in December of
'05, have you ever interviewed Brian [Kieth] Henricks?  

 

A.        No.

 

Q.        Have
you had a few conversations with him that have been limited to other matters?

 

A.        Yes.

 

Henricks
argues that Detective Rogers=s
testimony is evidence that Henricks exercised his right to retain counsel and
that he followed his counsel=s
advice and exercised his right to remain silent.  Henricks also argues that
Detective Rogers=s
testimony implies that Henricks admitted guilt to his attorney and that he was
willing to cooperate in the hopes of negotiating a lighter sentence.








To
preserve an issue for appeal, a timely objection must be made that states the
specific grounds for objection, unless the specific grounds are apparent from
the context.  Tex. R.
App. P. 33.1(a).  A general or imprecise objection may be
sufficient to preserve error for appeal if the legal basis for the objection is
obvious to the court and to opposing counsel.  Buchanan v. State, 207
S.W.3d 772, 775 (Tex. Crim. App. 2006).  Preservation of error provides trial
courts an opportunity to prevent or cure errors so as to permit the trial to
continue to a final conclusion free from attack and reversal on appeal.  Id. 
Therefore, an objection must be specific enough so that the trial court can
make an informed ruling on the subject matter of the objection.  Lankston v.
State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992).  When the objection is
not specific and the legal basis is not obvious, then an appellate court cannot
reach the merits of the issue on appeal.  Buchanan, 207 S.W.3d at 775.  


Henricks
did not object to Rogers=s
testimony on the ground that it was a comment on Henricks=s right to retain counsel
or his right to remain silent.  Henricks=s
only objection was to statements made by Crow because these statements were
protected by the attorney-client privilege.  Attorney-client privilege protects
confidential communications between the client and his attorney made for the
purpose of facilitating the rendention of professional legal services to the
client.  Tex. R. Evid. 503
(b)(1).  Henricks argues that the objection, while imprecise, was not fatal because
the grounds for objection were apparent from the context of the testimony.  We
disagree.  There is nothing in the record that would alert the trial court that
Henricks was objecting to a violation of his constitutional rights.  Instead,
the record indicates that counsel made the objection that he intended to make. 
Because that objection does not comport with Henricks=s complaint on appeal, this issue is not
preserved for review.  See Routier v. State, 112 S.W.3d 554, 586 (Tex.
Crim. App. 2003). 








            Even
if the objection was sufficient to preserve error, the trial court did not err
in allowing the testimony.  To show a violation of Henricks=s right to remain silent,
the offending language must be of such a character that the jury would
necessarily take it as a comment on the defendant=s
right to remain silent.  Bustamante v. State, 48 S.W.3d 761, 765 (Tex.
Crim. App. 2001).  It is not sufficient that the language might be construed as
a comment on the defendant=s
silence.  Id.  Detective Rogers=s
testimony did not rise to the level of commenting on Henricks=s right to remain silent. 
Henricks argues the jury could infer from Detective Rogers=s testimony that, because
Henricks retained an attorney and followed his advice by not talking to
Detective Rogers, he must be guilty.  However, the testimony must do more than
create a possible inference.  Detective Rogers testified that he did not
interview Henricks during the investigation; however, the testimony does not
indicate that Henricks refused to talk to Detective Rogers.  In fact, the
evidence showed that Henricks cooperated in the investigation by leading the
police to the discovery of the body and the gun. 

Evidence
that an accused retained counsel is not admissible to establish guilt.  Hardie
v. State, 807 S.W.2d 319, 321 (Tex. Crim. App. 1991).  But, the fact that
Detective Rogers went to Crow=s
office was not offered as evidence of guilt.  Detective Rogers testified that
he was asked to go to Crow=s
office as part of a homicide investigation.  Henricks concedes that this
testimony and testimony that Henricks was at Crow=s
office when Rogers arrived is proper.  Because this testimony was proper, the
State did not impermissibly comment on Henricks=s
exercise of his constitutional right to counsel. 

There
was also no testimony regarding plea negotiations.  Henricks was cooperating by
helping the police find the body and the murder weapon.  Henricks=s trial strategy was to
emphasize this cooperation.  Henricks=s
attorney cross-examined Detective Rogers regarding Henricks=s cooperation and his
interactions with Crow.  There was no testimony about Henricks entering a plea
or the offer of a plea if he cooperated.  The trial court did not err in
allowing the testimony.  We overrule Henricks=s
first issue on appeal. 

Character
Evidence

Henricks
argues that evidence of Henricks=s
character was improperly admitted because his character was never placed in issue.
We review the trial court=s
evidentiary rulings for an abuse of discretion.  Winegarner v. State,
235 S.W.3d 787,790 (Tex. Crim. App. 2007).  As long as the trial court=s ruling is within the zone
of reasonable disagreement and is correct under any theory of law applicable to
the case, it must be upheld.  Id.








Generally,
character evidence is not admissible to show that a person acted in conformity
with that character on a particular occasion.  Tex. R. Evid. 404(a).  However, a character trait of the
accused offered by the accused or offered by the prosecution to rebut a
character trait offered by the accused is admissible.  Rule 404(a)(1)(A). 
Admissible character evidence can be offered only in the form of reputation or
opinion evidence.  Tex. R. Evid.
405(a).  Specific instances of conduct may be admissible if the person=s character is an essential
element of a charge, claim, or defense.  Tex. R. 
Evid. 405(b).

Henricks=s opening statement raised
the issue of self-defense.  Henricks attacked the victim=s character by stating that Robert was an
angry alcoholic.  The State objected to this statement.  The trial court held
that, while Henricks could not attack the victim=s
character, he could discuss self-defense.  Henricks continued his opening
statement:  

You
will learn during the day of December the 4th, 2005, Robert MacBird was beating
Brian=s mother.  He
beat her not once, not twice, but he attacked her three times, three times on
December 4th, 2005.  This is a case about abuse.  It=s a case about self‑defense, and it=s a case about defending
your mother.

 

Henricks
concluded his opening statement by saying that he shot and killed Robert in
fear for his life and in defense of his mother.

The
State called William Allen Srack to testify.  Srack testified that he lived in
the same subdivision as Henricks and the MacBirds and that they had visited
each other=s homes. 
Srack testified about the events of the night of December 4, 2005.  Srack
testified that Henricks came to his house the night of the shooting and told
him that Robert had Diane on the ground and was trying to hurt her.  Henricks
interfered attempting to help Diane.  Srack testified that Henricks told him
that Robert had a tire tool and was hitting Henricks and Diane with it.

The
State asked for a sidebar and gave notice of its intent to go into Henricks=s character.  Henricks
objected, stating that it was inadmissible specific instances of conduct.  The
trial court allowed the testimony, stating that the self-defense issue had been
raised.  The State asked Srack if Henricks had a reputation for being
peaceful.  Srack testified that he had seen examples of Henricks being
aggressive and that his tone of voice was threatening.  He further testified
that there had been times when Diane had asked him to come to her home to
protect her from Henricks. 








Henricks=s case was based on the
defensive theory that Robert was the first aggressor and that Henricks acted in
self-defense and in defense of his mother.  The State was allowed to rebut that
with character evidence that Henricks was aggressive and not protective toward
his mother.  See Jones v.  State, 241 S.W.3d 666, 669 (Tex. App.CTexarkana 2007, no pet.). 
The trial court did not err in allowing Srack=s
testimony about Henricks=s
character.  Henricks=s
second issue on appeal is overruled.

Expert
Testimony on Blood Spatter

Henricks
argues that the State=s
actions in withholding discovery regarding blood spatter testimony deprived him
of a fair trial and that the trial court should not have allowed the evidence
or, alternatively, should have granted his motion for continuance.

Upon
defendant=s request or
a trial court=s order,
the State is required to disclose a list of witnesses it intends to use at
trial, photographs, defendant=s
written statements, letters, accounts, and other evidence material to any
matter in the case.  Tex. Code Crim.
Proc. Ann. art. 39.14 (Vernon Supp. 2008).  Evidence that is willfully
withheld from disclosure under a discovery order should be excluded from
evidence.  Oprean v. State, 201 S.W.3d 724, 726 (Tex. Crim. App. 2006.);
Osbourn v. State, 59 S.W.3d 809, 816 (Tex. App.CAustin 2001), aff=d, 92 S.W.3d 531 (Tex.
Crim. App. 2002).  Because exclusion is an extreme solution, it should not be
imposed absent willfulness on the part of the prosecution.  Osbourn, 59
S.W.3d at 816.  Determining if the State acted willfully encompasses two
factors: (1) whether the prosecutor acted in bad faith in failing to disclose
the evidence and (2) whether the defendant can reasonably anticipate the
contested evidence.  Wood v. State, 18 S.W.3d 642, 649-50 (Tex. Crim.
App. 2000); Nobles v. State, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992).

In
determining whether the State acted in bad faith, we ask the following:  (1)
whether the defendant established that the State intended to deceive him; (2)
whether the State=s
notice left the defendant adequate time to prepare; and (3) whether the State
freely provided the defendant with information by maintaining an open file
policy, providing updated witness lists, or promptly notifying the defendant of
new witnesses.  Hardin v. State, 20 S.W.3d 84, 88 (Tex. App.CTexarkana 2000, pet. ref=d).  Similarly, in
determining whether the defense could have anticipated the State=s witness, we ask the
following: (1) the degree of surprise to the defendant; (2) the degree of
disadvantage inherent in that surprise; and (3) the degree to which the trial
court was able to remedy that surprise.  Id. at 88-89.








Henricks
filed a discovery motion, but there is no signed standard discovery order in
the record.  Henricks attached an unsigned copy of the standard discovery order
for Montgomery County to his motion for new trial.  The standard discovery
order states that the State must produce a list of anticipated trial witnesses,
lab reports, physical evidence, reports of experts, and photographs.  The
standard discovery order also states that any photographs, diagrams, or models
prepared as jury aids are considered work product.

A
week prior to trial, the State filed a motion for continuance, stating that lab
results regarding blood spatter and DNA would be unavailable until after the
scheduled trial date.  The trial court granted the continuance.  Subsequently,
the State filed a discovery response listing Investigator Celestina Rossi as a
fact witness.[2]  The next
day, the State amended its discovery response listing Investigator Rossi as an
expert witness in the area of crime scene investigation.  Henricks filed a
motion for continuance, stating that he had not been provided with some
discovery and that DNA results and blood spatter results would not be available
until ten days before trial.  Henricks argued that the standard discovery order
required that discovery be made available at least twenty days before trial. 
The trial court denied the motion.  On the day of trial, the State supplemented
its discovery response by adding that Investigator Rossi would testify as a
firearms expert, specifically regarding the distance of the firearm from the
victim when discharged.

 Investigator
Rossi testified that she was the lead investigator on the case in charge of
collecting evidence at the scene.  She also described evidence that was
collected at the scene.  Henricks stipulated that Investigator Rossi was an
expert in the fields of bloodstain pattern analysis B  including blood spatter,
castoff, and impact B
and in the field of firing distances.  Investigator Rossi testified that she
believed it would aid the jury in understanding her testimony if the jury was
permitted to view a PowerPoint presentation.  The first part of the PowerPoint
presentation consisted of definitions and descriptions of different types and 
patterns of  bloodstains.  The second part of the presentation was comprised of
photographs that Investigator Rossi took at the scene.  Henricks objected,
stating that he had no notice of the presentation.  The State argued that the
PowerPoint presentation was a demonstrative aid that was prepared to aid the
jury with Investigator Rossi=s
testimony.  The State also argued that the photographs had been made available
to Henricks prior to trial.  The trial court allowed the PowerPoint
presentation.








 Investigator
Rossi testified about each photograph in the presentation describing what type
of stain the blood appeared to be: transfer, castoff, or expiratory stain and
high, medium, or low velocity stain.  The photographs were already entered into
evidence.  The photographs had measurements written on them regarding the size
of the bloodstain.  The PowerPoint presentation was not introduced into
evidence and is not part of the appellate record. 

Henricks
asked for the appointment of an expert to rebut Investigator Rossi=s testimony regarding blood
spatter.  The trial court allowed the appointment of an expert, Lou Akin.  The
trial court allowed Henricks extra time to prepare his expert and to
cross-examine Investigator Rossi.  Also, at the conclusion of the State=s case-in-chief, the trial
court allowed Henricks more time to prepare his case by adjourning early.  Akin
testified for the defense regarding blood spatter and rebutted Investigator
Rossi=s opinion.

There
is nothing in the record to suggest that the State willfully withheld
discovery.  Almost a month before trial began, the State revealed in its motion
for continuance that it was anticipating blood spatter testimony.  At least
fourteen days prior to trial, Investigator Rossi was listed as an expert
witness in the area of crime scene investigation.  The State also updated its
discovery responses and gave Henricks access to the evidence in the case. 
During trial, Henricks stipulated to Investigator Rossi=s expertise in the area of blood spatter. 
Further, in an attempt to remedy any surprise Henricks may have experienced,
the trial court appointed a blood spatter expert for Henricks and allowed
Henricks extra time, mid-trial, to prepare his expert.  The State did not act
in bad faith, and Henricks had sufficient notice to anticipate the blood
spatter testimony. 

The
trial court did not err in allowing Investigator Rossi=s PowerPoint presentation. The presentation
was only an aid for the jury to understand Investigator Rossi=s testimony.  A witness may
be allowed to demonstrate before the jury so as to make her testimony more
plain and clear.  Phea v. State, 190 S.W.3d 232, 234 (Tex. App.CHouston [1st Dist.] 2006,
pet. ref=d).  Her
testimony consisted of complex blood spatter analysis, and the presentation was
used as a visual aid to assist the jury while she testified.  Henricks had
access to all the photographs used in the presentation, and they had already
been entered into evidence.  Further, the PowerPoint presentation was not
entered into evidence and was not available to the jury during its
deliberations.   








The
trial court did not err in denying Henricks=s
motion for continuance.  Henricks knew there would be testimony on blood
spatter when the State filed its motion for continuance, almost two weeks
before he filed his motion.  Henricks had sufficient time to prepare for any
testimony regarding blood spatter.  Henricks=s
third, fourth, and fifth issues on appeal are overruled. 

In-Court
Demonstration

Henricks
argues that the trial court erred in allowing Investigator Rossi to demonstrate
her theory on how Robert was killed.  The trial court has discretion whether to
admit or exclude a demonstration.  Cantu v. State, 738 S.W.2d 249, 255
(Tex. Crim. App. 1987).  The court abuses its discretion by allowing a
demonstration if the facts in evidence do not show that the proposed
demonstration was conducted under substantially similar circumstances and
conditions to the event to which the demonstration relates.  Id.  A
demonstration need not be made under identical conditions of the event.  Valdez
v. State, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989); Wright v. State,
178 S.W.3d 905, 919 (Tex. App.CHouston
[14th Dist.] 2005, pet. ref=d).  
Dissimilarities in the demonstration to the actual event go to the weight to be
given the evidence and not the admissibility of the evidence.  Wright,
178 S.W.3d at 919.

 After
Investigator Rossi testified regarding the physical evidence observed and
collected at the crime scene, the State asked Investigator Rossi if she had an
opinion as to how the bullets entered and exited the body and if a
demonstration would aid the jury in understanding her testimony.  Henricks
objected to the demonstration on the basis of surprise and for the reasons that
it was outside the area of the witness=s
expertise and that the proper witness for that testimony was Dr. Patricia
Moore, who performed the autopsy.  The trial court asked to see the
demonstration outside the presence of the jury.  The demonstration was
presented outside the presence of the jury, and Henricks again objected,
stating that the demonstration was misleading and that there was no evidence
regarding the trajectory of the bullets within the body.  The trial court
allowed the demonstration but gave this limiting instruction to the jury:

Demonstrations of
this nature are based upon the recreation of witnesses who are doing the
demonstration, based upon what they feel they have  learned from the crime
scene or, et cetera.  This is not an actual recreation of what happened.  This
is their opinion of what happened.  And you need ‑‑ you are the
ones who decide what weight to be given to the demonstration, if any.

 








Investigator
Rossi testified that the angles used in the demonstration were approximate and
that it was not done to scale.  Investigator Rossi used different colored rods
to represent each gunshot wound.  Investigator Rossi positioned each rod to
demonstrate her opinion as to the position of Robert=s body at the time of each shot based on the
entry and exit wounds.  

The
trial court did not abuse its discretion in allowing the demonstration.  The
demonstration was supported by facts in evidence. Investigator Rossi=s testimony was based on
her personal observations as well as her deductions from the evidence collected
at the scene.  Because Investigator Rossi gave extensive testimony regarding
the physical evidence and made reasonable deductions from it, we find that the
demonstration was substantially similar to the actual event as theorized by the
State.  Henricks=s
sixth issue on appeal is overruled. 

Deadly
Weapon Finding

Henricks
argues that the trial court erred by sua sponte adding a deadly weapon finding
to the judgment.   A defendant is not eligible for community supervision when
there is an affirmative finding that a deadly weapon was used or exhibited
during the commission of the offense. 
Tex. Code Crim. Proc. Ann. art. 42.12, '
3g(a)(1)(I)(2) (Vernon Supp. 2008).  Also, a defendant=s eligibility for parole is affected by a
deadly weapon finding.  Tex. Gov=t Code Ann. ' 508.145(d) (Vernon Supp. 2008); Shankle v.
State, 119 S.W.3d 808, 813-14 (Tex. Crim. App. 2003).  A deadly weapon is
defined as a firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury or anything that in the manner
of its use or intended use is capable of causing death or serious bodily
injury.  Tex. Penal Code Ann. ' 1.07(17) (Vernon Supp.
2008).  








The
trial court may enter an affirmative finding in the judgment on the use of a
deadly weapon when the indictment alleges use of a deadly weapon, the weapon is
deadly per se, or the factfinder affirmatively answers a special issue on the
use of a deadly weapon.  Polk v. State, 693 S.W.2d 391, 394-95 (Tex.
Crim. App. 1985).  When the indictment specifically places the issue before the
jury, then an affirmative finding is de facto made when the jury finds the
defendant guilty as charged in the indictment.  Polk, 693 S.W.2d at 394;
Barecky v. State, 639 S.W.2d 943 (Tex. Crim. App. 1982).  An affirmative
finding will arise as a matter of law when the jury finds that a  firearm was
used in the commission of the offense because a firearm is a deadly weapon per
se.  Giles v. State, 617 S.W.2d 690 (Tex. Crim. App. 1981); Williams
v. State, 567 S.W.2d 507 (Tex. Crim. App. 1978); Stewart v.  State,
532 S.W.2d 349 (Tex. Crim. App. 1976).  

In
this case, the trial court did not err in making the affirmative finding for
the use of a deadly weapon.  The indictment placed the issue before the jury by
alleging that Henricks caused the death of Robert by shooting him with a
firearm.  The jury found Henricks guilty as alleged in the indictment. 
Therefore, the deadly weapon finding arose as a matter of law.  The trial court
did not err in entering a deadly weapon finding in the judgment.  Henricks=s seventh issue on appeal
is overruled. 

Conclusion


The
judgment of the trial court is affirmed. 

 

 

RICK STRANGE

JUSTICE

 

May 21, 2009

Publish.  See
Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We note that Henricks=s
middle name is spelled Kieth and Keith in court documents.





[2]We note that the State filed its discovery response in
compliance with the standard discovery order; therefore, the State cannot rely
on the fact that a discovery order was not in effect.